Thank you. Good afternoon, and may it please the court. Jackie Tarleton for Dawn Bennett. Your Honors, the District Court's denial of a 60-day continuance violated due process in a case with 15 terabytes of discovery, alleging a $14 million loss with sentencing exposure up to Ms. Bennett's natural life, where the government presented 32 trial witnesses and previously acknowledged the complexity of the case, as did the District Court, which is best described at case was extraordinarily complex. In December 2017, it pushed for a trial date after September of 2018, more than nine months away, citing the duration of the scheme, the length of the investigation, the nature of the charges, and the sheer volume of victims and loss amount. It characterized this as a complex case with substantially more voluminous discovery than a typical case. And the District Court agreed. It said that this case was far more complex than with 17 counts, two co-defendants, ongoing discovery production, and terabytes of electronic discovery. In fact, in January of 2018, the government said that five months to trial was not enough for any lawyer with white-collar experience to get up to speed. It would, quote, be difficult if not impossible for an attorney for the government to get up to speed even by June. And that's at the Supplemental Joint Appendix, page 103. To understand the nature of volume and nature, first with respect to volume, 15 terabytes represents 6.5 million pages, or 1,300 filing cabinets. With the 35 days available to Mr. Boyle, that's reviewing 37 filing cabinets, or 185,000 pages. Now, how many lawyers had, by the time Mr. Boyle got in, how many lawyers had been involved in representation or had represented? I'm glad you asked that, Your Honor. Yeah. Because I think the government's characterization isn't quite right. In the first month after the complaint was filed, there were two lawyers who entered sort of limited appearances. Stephen Greminger never actually entered an appearance, but believed he was going to appear as local counsel. Mark Schamel entered a conditional limited appearance, but was only in the case for a couple of weeks. Within one month of the complaint being filed, the Federal Public Defender's Office was appointed, and they were in the case for four months. Is that the Federal Public Defender's Office in Maryland? That's correct, Your Honor. Yes. Go ahead. That's the third one then. Go ahead. Well, I believe, though, that it's the first. I understand you don't want to count the first two, but I'll count the first two. Go ahead. Understood, Your Honor. Then in February of 2018, there was a law firm that entered an appearance that ultimately withdrew for a conflict of interest. In fact, Judge Zinnes encouraged one of the lawyers from that firm to take the fifth in a proceeding before her. So they were removed in May of 2018, not through any fault of Ms. Bennett. FPD was reappointed. They were in the case for three months before Dennis Boyle, the lawyer who ultimately took this case to trial, was appointed on August 28th of 2018. I think this duration is really important to note. That's exactly one year from the date the criminal complaint was filed, and I was interested, so I looked it up. The median time from filing to disposition of criminal felony cases, including pleas in Maryland, is over a year. So despite this case being complex... Now, are you and your office the only lawyers since Mr. Boyle? She did have another lawyer for sentencing, Your Honor, but that was after the issues that we've raised as part of our due process claim. And you're with the Public Defender's Office in North Carolina? I am, that's right. So it depends on how you count, there's between five and eight lawyers or sets of lawyers, correct? All told, I would say there were seven entities that entered an appearance over the entire course of the case, and that includes the appeal. Very good. Counsel, this is Judge Quavobam. I think I'm right on this, but tell me if I'm not. In August 30th of 18, Boyle, I think he had appeared two days before, and in that hearing said that he was aware of the discovery and could be prepared. I think I read that right. And then I know there was a later emergency motion for a continuance in, I think, September 12th. I think the basis of that emergency motion, which I think is the motion that's on appeal, tell me if I'm wrong about that, the basis for that was Ms. Bennett's medical issues rather than discovery issues. Do I have that right? So both of those are correct, Your Honor, but I'd like to offer a little more clarification, if I could. First, with respect to Mr. Boyle's statement, he did, after the continuance had been denied by the judge, say that the question was more a question of identifying witnesses and locating them. He said, we'll work on that expeditiously. But there were issues with the experts that he contacted, and those experts cited the lack of adequate preparation time as reason why they could not provide expert opinions that were satisfactory either to the government or to the district court. And we detailed this at pages 10, 11, and 12 of our opening brief, where the government criticized one of the experts, Macy, for giving, quote, no explanation of the source of his understanding and saying he didn't appear to have ever reviewed certain documents. Van Zant, at a voir dire hearing where he offered his proposed expert testimony, the government said it wasn't based on sufficient facts or data, was concerned that Mr. Van Zant hadn't reviewed certain documents in the case. And Mr. Van Zant said he didn't have the opinions that everyone was looking for because the defense didn't have enough financials for him to give a value. And part of the reason his report isn't more precise is simply timing. And this is at JA 1343 and 1346. So I think it's clear from the record we have before us that the experts didn't have adequate time to prepare a sufficient opinion. Mr. Boyle didn't have adequate time to investigate potentially exculpatory witnesses or to develop fulsome cross-examinations of the witnesses who did testify. And that's borne out by the fact that the one witness he did proffer at a voir dire was excluded by the district court because of inadequacies in his proffered testimony. The other two he ultimately did not call, but one of the reports was criticized by the government for being insufficient. And in fact, the defense only called one witness once the case did go to trial. And again, this was not an extraordinary continuance that Mr. Boyle asked for. He asked simply for an additional two months to get up to speed. The government had already said that five months wasn't enough for a new lawyer to be prepared. And Mr. Boyle filed his motion to continue the next day after he was appointed. And he reiterated his concerns about being prepared for trial in his filings related to experts. This court has at least three times vacated convictions because of a failure to grant a continuance. That was in United States against Evans, Shirley versus North Carolina, and United States versus Walker. And it refused to give preclusive effect where it believed that insufficient time was given for a lawyer to be prepared. And that was in Lee versus Winston. There's been an allegation that Ms. Bennett was somehow acting in a dilatory fashion by asking for this continuance. But I want to make sure the court understands that Ms. Bennett was in pretrial detention at the time that this motion was filed. And she had no incentive to delay the trial outside of an interest in making sure that her counsel of choice was adequately prepared. And as the government notes in its response, she had previously sought the earliest possible trial date, but was willing to agree to more than 60 days of a continuance in order to accommodate the court schedule and the government schedule. But the bottom line is on this issue is that it's reviewed by on appeal for abuse of discretion. That's correct, Your Honor. But as I've noted, this court has previously found that that discretion has been abused. And where the It is. It is. And we absolutely agree with that. But I think where the median time from filing to disposition and criminal felony cases is just over a year. And this case, in fact, went to trial in that amount of time, despite how very complex everyone acknowledged it was. I don't think that any lawyer could have been prepared by reviewing 15 terabytes of discovery that include financial documents that required an expert searching eye and professional opinion to fully understand. I don't think that any lawyer could have been adequately prepared, consistent with Ms. Bennett's due process rights. So we would ask the court to vacate her conviction for that reason. We'd like to also discuss a little bit today our argument about the district court's 20-year sentence, which we believe is procedurally and substantively unreasonable. I'd like to focus on the procedural aspect today, unless the court has other questions. But the district court here treated the advisory guideline range as presumptively reasonable. It said it was doing so three times. Those are at JA-2103 and JA-2118 of the joint appendix. The judge said, I start with the guidelines. They are presumptively reasonable. Counsel, I'm sorry. Counsel, if I could, Ms. Bennett, I'm glad you brought that up. You're correct about the three references to presuming reasonableness based on the guidelines. How do you respond to the fact that the district court went through the 3553 factors in fairly good detail and sentenced Ms. Bennett to not just below the guidelines, but below the government's requested benefits? And as you answer that, consider Mendoza Mendoza's holding that we look beyond the words to what the district court did. So words, you're right. But what about what the court did? Absolutely, Your Honor. And I think Mendoza Mendoza is a great place to start. Because if you look at what actually happened to Mendoza Mendoza, and not just what the court said, the court actually did vacate and remand that case for recent sentencing, despite the fact that the court discussed certain 3553A factors. And the same is true in the Nelson case, where the Fourth Circuit had previously affirmed a district court sentence. And the Supreme Court said, no, no, no. Even though the district court did not treat the guidelines as mandatory, it nonetheless improperly erected a barrier. It shifted the burden by treating the guideline range as presumptively reasonable, which a district court is not entitled to do. We know from this court's previous cases, including United States v. Torres-Aguirre, and that's at 481 Federal Appendix 803, that even a downward variant sentence, if it suffers a procedural error, should be vacated and remanded. So the fact that it was a below-guideline sentence that was ultimately imposed is not dispositive in this case. We also cite to the Wilms and Pegueiro cases in the Sixth and Second Circuits, where below-guideline sentences were vacated and remanded, where the district court treated the advisory guideline sentence as presumptively reasonable. And that's important. But what about, but what about the, what did the district, how did the district court present, treat it as, besides using the words, which I recognize may be a problem, how did the district court treat the guidelines as presumptively reasonable? I think we can look, Your Honor, at the sentence the district court ultimately imposed. Because even though it was a below-guideline sentence, it was still a 20-year sentence. Ms. Bennett had requested a three-year sentence. So where the district court ended up is significantly closer to the advisory guideline range and to the sentence requested by the government than it is to the sentence requested by Ms. Bennett. And I think that is further evidence, in addition to the court's statements on the record, which again were three times, it wasn't an offhanded one-time remark, that she was treating the guidelines as presumptively reasonable. And in fact, she said, according to the, that the guidelines are presumptively reasonable according to the law in this, the Supreme Court and the Fourth Circuit, which to me suggests a feeling of being bound by what she believed the precedent to be. And of course, under Nelson and Mendoza-Mendoza and Rita, that would be reversible error for this court. And we believe that Ms. Bennett's 20-year sentence should be vacated and remanded for that reason. I would also note just briefly in Mendoza-Mendoza, this court said that it would only not remand if there were, quote, no serious possibility that the district court treated the statements on the record. And the sentence that she ultimately arrived at, that can be fairly said from this record, including the fact that the government never argued harmless error in this case. I would like to briefly... Excuse me, this is Mr. Alton, this is Judge Schreckler. Do you agree that we apply plain error analysis to this problem? To the question of whether the guidelines were treated as presumptively reasonable? Yes. No, Your Honor, I don't. I believe that by requesting a sentence below the sentence that she ultimately received, Ms. Bennett preserved her right to argue that the sentence was procedurally unreasonable. And so I believe that this should be reviewed for abuse of discretion. Okay, thank you. Thank you. And just briefly, Your Honor, I also want to mention our forfeiture argument. We believe that the $14 million forfeiture order was excessive. And given my limited time, I just want to focus briefly on our first statutory argument, which is that neither 18 U.S.C. 371 nor 15 U.S.C. 78JB is specifically enumerated as a basis authorizing criminal forfeiture in any of the criminal forfeiture statutes. And the closest description is, quote, offense involving fraud in the sale of securities, and that's in 1961. But here, we know... I thought conspiracy was in there. Conspiracy is in there, Your Honor, but the conspiracy referenced in Ms. Bennett's superseding indictment is a conspiracy, a general conspiracy under 371 pegged to 15 U.S.C. 78JB. And we know... 371 references every criminal offense in the United States Code. But her indictment, Your Honor... It's a conspiracy to commit an offense against the United States. That's correct. Right. And the offense that is enumerated by the government in the superseding indictment is 15 U.S.C. 78JB. And that offense, we know from the Supreme Court's decision in United States versus O'Hagan, does not necessarily involve fraud. And because of that, we don't believe that it can fairly be considered an offense involving fraud in the sale of securities and therefore does not authorize the criminal forfeiture that was ordered in this case. So for these reasons and the reasons in our briefs, we would ask the district court to for at least a new sentencing hearing. I have one more question on the forfeiture issue, Judge King, if I could ask that. You go right ahead, Judge Quavo. Go right ahead. Thank you. Counsel, does... Yeah, a little bit of our problem is a lot of the arguments about the forfeiture finally show up in the reply. So we don't really have the government's position. I guess we'll hear that in a little bit. But taking everything you say is true in your reply about Section 78 being looked at under the categorical approach, doesn't the wire fraud conviction also provide a basis for forfeiture under the RICO statute? And while you rightly point out that in the actual counts, I guess, 6 through 17, those don't total up to the $14 million. They do have the forfeiture claim that specifically references the $14 million. So why wouldn't wire fraud be an independent basis for forfeiture, even if we agree with you on everything else? Judge Quavo, thank you for that question. We are only challenging the forfeiture that is pegged to counts one through five. And so for the amount that, and I believe probably given the posture of the case, it would make sense for the district court to address this in the first instance to get the precise monetary values. But we believe that the 6 through 17, we are not challenging that forfeiture amount under this first statutory argument. So we're not contending that wire fraud doesn't authorize criminal forfeiture. But we just believe that the amounts attributable to counts one through five, which is a significant portion of the $14 million forfeiture judgment, was not authorized by statute. Okay. All right. Last question on that. The argument about application of the categorical approach to 78 to see whether it involves sale of securities or something broader than that, I understand your application of the general categorical approach cases, but there's not a question in the context of this statute, is there? Not that I'm aware of, Your Honor, but I think Shular discusses an offense involving fraud. I think we get sort of where we need to go, the fact that it should be an elements match. So that would be the closest case that I would point you to. What case? Could you say that again, please? Shular, the recent Supreme Court case, I believe it came out in maybe June. Okay. Thank you. Thank you, Your Honor. Thank you very much, Ms. Carlton. You saved the rebuttal time as well. Now, the government represented by Ms. Wise, Ms. Wine, I'm sorry. Yes, I am. Good afternoon. May it please the court. Thank you. Good to be here. May it please the court, Jennifer Wine on behalf of the United States of America. I'd like to jump in on this last issue and the questions that Judge Quattlebaum had asked about the forfeiture argument. As correctly pointed out, the argument seems to have evolved and the current argument of the defendant was not raised until the reply brief. Therefore, the government has not had an opportunity to cite authorities in its brief on this issue, but I'm happy to address it here today. And if you would like authorities in support of the government's argument, I'd be happy to submit supplemental briefing on that point. I think it's an easy argument to dismiss with. As Judge King rightfully pointed out, the appropriate forfeiture statute in this case, which is 981A1C, as incorporated into this in explicitly includes a conspiracy to commit any of the enumerated offenses that are listed in 981A1C. And one of those enumerated offenses includes wire fraud and thus a conspiracy to commit wire fraud as charged in the superseding indictment, as well as the security fraud conspiracy that was charged in count one. So my argument being that we don't even need to reach this argument that is raised for the first time on the reply brief by the defendant, that somehow the language fraud in the sale of securities under any punishable under any law of the United States under section 1961, somehow it should be read to mean fraud in the scale of security is punishable under any law of the United States, except for title 15 securities fraud. We don't even have to reach that because here this defendant was also convicted of a wire fraud conspiracy and forfeiture is provided explicitly under 981A1C and 28 USC 2461C for the proceeds of that wire fraud conspiracy. It's also clear that the proceeds of that wire fraud conspiracy are also the 14.3 million dollars that the defendant received as the proceeds that she obtained from her victims in this case. Just by looking at the superseding indictment in this case, it incorporates into the wire fraud conspiracy count, it incorporates the same manner and means as the securities fraud conspiracy. And it basically references in the manner and means that the defendant and her co-defendant obtained at least 20 million dollars, I believe it was from 46 individual victims in this case. And I believe that is at joint appendix, it is at, one second, it's at joint appendix 61 and that is paragraph 21T of the superseding indictment which says between in or about December 2014 and in or about July 2017, Bennett and Mashko solicited and received over 20 million dollars from more than 40 different D.J. Bennett investors. The testimony from trial and the evidence admitted at trial that supported the government's 14.3 million dollar forfeiture money judgment was the testimony of a forensic accountant from the FBI. And the forensic accountant relied upon an exhibit which was government's exhibit chart 6D. And her testimony, which can be found, one moment, her testimony on that point basically says that the 20 million dollar figure, less approximately 6 million dollars that were paid back to victims, were the proceeds or the securities fraud conspiracy or whether we're looking at the wire fraud conspiracy. So this is really an argument that we don't have to have. That said, we can still discuss the fact that securities fraud, I do believe, is included as specified unlawful activity, which is picked up in section 981A1C. 981A1C references specified unlawful activity under section 1956C7. And 1956C7, in turn, if we follow the trail, references section 1961. That is the RICO predicate statute. And in the RICO predicates, we have fraud in the sale of securities unpunishable under any title of the United States. And there is nothing here. There are no cases cited in the defendant's reply brief standing for the proposition that that language should be read not in its plain meaning, but instead read to exclude a title 15 offense, specifically section 10B of the Securities and Exchange Act. So it's just not, it strains any reading of that statute to say that it does not include that. But again, to get back to the argument, I don't think we have to get there. To the question of whether there is any case on point on this, I do believe it is one of the cases that was cited in the defendant's reply brief. With apologies for my pronunciation, I believe that it's Nijawan v. Holder is the case. And in that case, the Supreme Court refused to apply the categorical approach to a different provision. This was the aggravated felony provision of the INA, which specifically referenced fraud language. And I want to get it right here on specifically what it said. It referenced both fraud and deceit. And the statute said, an offense that involves fraud or deceit in which the loss to the victims exceeds $10,000. And in Nijawan, the case that is cited in the defendant's reply brief, the court specifically held that that language, which is very similar to the fraud in the sale of securities language found in the RICO predicate offense, required looking to the circumstances of the offense. And so I would disagree, to the extent that this argument is properly before the court today, I would disagree that the categorical approach would have to be applied to the RICO predicate and whether or not the Title 15 offenses of which this defendant was convicted of should be, that the categorical approach would have to apply to those. I don't believe that the case law supports that, even the case law cited by the defendant. I don't see Hagan as changing that in any way, the case that was cited by the defendant. And moreover, in conclusion on this point, the wire fraud conspiracy, as Judge Quattlebaum points out, it has the same proceeds. And so the $14.3 million in proceeds is supported by that. So having used most of my time to address that, yes. Counsel, I'm sorry, I'll be real quick, because I know you got other issues. Isn't, your position is that we look at this whole forfeiture question under plain error review, correct? Yes, Your Honor. And that's because this was not raised below. And while the defendant raises that the fact that the forfeiture judgment was challenged at all below preserved this issue for appeal, and therefore a de novo review should apply. That is inconsistent with the holdings of this court, which in Massenburg, the court held that an objection on one ground does not preserve an objection on a different ground. And then later in Lavabit, the court held that if a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. None of the three, or if you consider it four with the new argument raised in the reply brief, none of these arguments were raised below. While there were some challenges to the forfeiture, if you look at the transcripts of those hearings, they are not the arguments that are raised here. They are not the constitutional challenges, et cetera. So we do believe that plain error is the appropriate standard of review. And we don't believe that there was any error here, let alone plain error in the district court's order of the $14.3 million forfeiture money judgment. I have a question before you leave the forfeiture issue. Is there a practical reason for why you want this amount forfeited in addition to requiring it as restitution? Yes, Your Honor. There is a practical reason as well as a legal reason. I'll address the practical reason first. That's only what I'm interested in. As the defendant knows, and I will stick to that then. As the defendant notes here, there were not a good number or not a good deal of liquid assets remaining. So the proceeds or the ill-gotten gains of these offenses had been spent by the defendant before they could be seized. And so at the time that we arrived at sentencing in this case, there was very little in liquid assets remaining to compensate victims in this case. And as I said, there were more than 40 of them owed more than $14 million. As this court has recognized in its Blackmun decision, which I think has a good discussion of the legal basis between forfeiture and restitution, but also references the practical consideration, where we ended up in this case was with a $14.3 million money judgment, as well as the forfeiture of substitute assets. That was the amendment that was made to the preliminary order of forfeiture was to leave the forfeiture money judgment. And then in partial satisfaction of that money judgment to forfeit a number of substitute assets of the defendant, which were primarily personal property. In forfeiture, there is a well-established mechanism in a case like this through the U.S. Marshal Service with which to liquidate personal property or real property, which is not an issue in this case, to liquidate those, to get them into liquid assets or cash that can then be applied to restitution through a process that is known as restoration. There's a separate- Okay. Okay. Thank you. Thank you. You've answered my question. Thank you, Your Honor. So, if there are no further questions on forfeiture, I would like to turn back to address the questions that were raised as to the continuance. As Judge King appropriately pointed out here, there were a good number of lawyers prior to Mr. Boyle. Mr. Boyle was at least the fourth change of counsel, if you don't count the FPD or the federal public defender having been in the case twice. But I think we have to look at the continuance in light of the reasons that the judge here decided not to grant that continuance. And I think the most important context there is the timeline. So, if we look at this, what we had is we had the arraignment that was on the superseding indictment. And that took place in December. It was on December 5th of 2017. And that's at the Supplemental Joint Appendix 1. At that arraignment, the trial was tentatively set for September 4th of 2018. And that is SJA 119. On December 19th of 2017, the government filed a motion to set a trial date. So, we had a tentative trial date, and we moved to set in a trial date officially and to exclude time under the Speedy Trial Act. And as the defendant correctly noted, the government did request that the trial be set for after September 3rd, 2018. At the hearing on that, the defendant did ask for the earliest possible trial date, or July 2018. And the court set in the trial date for September 4th, 2018. Fast forward, the federal public defender comes into the case in May of 2018, and the court continues the trial until October 2nd, 2018, which was ultimately the date that the trial did begin. In August, on August 8th, 2018, so that was before this second continuance that is discussed in the appeals, the defendant requested another continuance. And the district court denied that continuance, noting both accommodations that had to be made by the court to make sure the defendant was prepared for trial. And that's at SJA 155 to 56, as well as the defendant's own conduct in thwarting her cooperation with her defense counsel at that time, who was the federal public defender and the orderly progression of the case. After that denial, then two weeks later, Mr. Boyle enters the case. And on August 29th, 2018, Mr. Boyle files this second motion for the continuance that's seeking a 60-day continuance. As we noted, he was the fifth new counsel in 13 months between the defendant's initial appearance and trial. And he was retained approximately six weeks prior to trial, which I think distinguishes this case from many of this court's prior decisions considering continuances in which defense counsel was brought in only a matter of days before the trial began. But the district court- And he was retained counsel, was he not? That's correct, Judge King. The district court gave several reasons on August 30th at the hearing on that motion on the continuance. And I think it's important to consider those reasons here in light of the Supreme Court's Unger decision, where they said that there are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the case where a request is denied. And so, looking at those reasons here, we have three primary reasons that the court denied the continuance. The first is that Mr. Boyle confirmed at the outset of the hearing on the continuance, before the judge would even let the federal public defender withdraw from representing the defendant, she confirmed that Mr. Boyle would be able to try the case on the date that was scheduled, on October 2nd of 2018. She acknowledged that he had entered his appearance and accepted the retainer, knowing that the trial was set to begin in six weeks, and that he wouldn't have done so if he had not intended to be prepared. And that's at JA 103 and 107. And then he repeatedly confirmed that he would be able to proceed and try the case on the date that it was scheduled. And that's at JA 102. And that discovery would not be a problem is at 116 to 117. The judge specifically noted the size of the firm, which was 170 attorneys approximately, and set forth in the government's motion, which were opposition, which was JA 99. And that with a firm of that size, they would be able to blow through discovery, particularly in light of modern technology. I don't think that it is appropriate to consider the number of file cabinets, because we now have technology that allows counsel to blow through discovery much faster than a page review. He would have had eight to nine weeks, the judge recognized, before the defense case would even come up. And she noted that many of the witnesses had already been interviewed by prior counsel, that's at JA 113 to 114, and offered to assist Mr. Boyle in getting that work product if that became necessary. She specifically referenced that the defendant had her counsel of choice, which was a firm with enough resources and with able and competent assistance of the defendant would be ready to go to trial. So that was the first thing. The second was that out-of-state witnesses had already been subpoenaed by the government for the trial date. That included, as the court recognized, 10 out-of-state victim witnesses, and that's at JA 112, five of whom had health concerns or family members with health concerns, and that's at JA 113. And then finally looked to the court schedule and the party's schedule. At that point, the judge referenced that there was no availability for a trial 60 days out, and that's at JA 113, and that a longer continuance would run into problems with a key law enforcement witness who was unavailable for three months from March to June, which would prejudice the government. She also reviewed counsel both for the government and for the defendant. There are other trial commitments, which would prohibit certain other dates from being available to reschedule. And she referenced that the kind of block that we need to do this right from all counsel involved, and you are not, if not the 10th and then close to the 10th defense attorney who has entered his appearance in this case, and that refers to each individual attorney referencing. That's why the number is different. The judge held, I simply cannot move this trial, and that's at JA 116. And then finally, including she noted that to move it would basically allow the defendant, a defendant with resources, to find resources close in time to trial, and then have that counsel say, I can't be ready, or I can be ready, but I really wish to be ready later. And then the orderly administration of the case is upset. And that's simply not what the cases in this court have held. A defendant's right to counsel cannot be used to thwart the orderly administration of the court. So I think looking at the reasons that the trial judge relied upon here, it's clear that this denial of the continuance was not an abuse of discretion. It was well-reasoned, and defense counsel made clear that he would be able to proceed. The final point on this that I'd like to make is that the issue that is raised with respect to the expert witnesses doesn't really tell the full story. The defendant herself elected not to call two of the proposed experts. That would be the corporate law expert and the economics consultant. And that's at JA 195, JA 1313, and JA 1214. And for the third proposed expert witness, Mr. Van Zant, the defendant herself elected to withdraw two of his opinions. And that's at JA 13 to 40. And the district court excluded testimony as to the corporate valuation of djbennett.com because it was not based on reliable data and methodology. And that's at JA 1464. So taken together, I think it's clear that the trial court did not abuse the discretion on this. With the remaining few seconds I have left, I would like to address the sentencing issue here. I do think that the reference to Mendoza, Mendoza is the correct one here. And I think that this is not a mere pass. Like, this is, in fact, a mere passing reference. If you look at what the judge actually did, instead of looking at the passing references out of context, it's clear that the judge here did not believe that the guidelines were presumptively reasonable or that she was bound by those. As evidenced best by the fact that she ultimately imposed a sentence that was 84 months below the guideline sentence. But instead here, she made those passing references while, first, explaining the fact that the government in this case had actually made a below guidelines recommendation. And then, second, referenced them before reviewing all of the reasons that they were not binding in this case. And with that, I ask that the court affirm the judgment below. Judge King, this is Judge Stryker. I have two questions, if you don't mind. Yeah, you go right ahead. Ask all you want, Judge Stryker. Thank you. Ms. Wyand, first of all, with regard to the question of involving the district judge's statements that the guidelines were presumptively reasonable, do you agree with your opponent that the standard of review is harmless error? I believe the standard of review on that, as set forth in our brief, is one of reasonableness. And that the courts look first to the procedural reasonableness and then to the substantive reasonableness. I don't agree that it's—I don't agree necessarily that it's harmless error. But the question is, which is the standard of review? Presuming it was error, is it harmless error or plain error analysis? Your Honor, it's a good question. I'm taking a quick look back at our brief. You know, your brief didn't address it. Your brief didn't even address whether or not it was presumptively unreasonable. Well, I don't believe that this issue was raised below. It was raised on the brief, though. Yeah, it has been raised on the brief. But I believe that because the issue was not challenged below, that I do believe that plain error would be the appropriate standard of review. All right. And my next question is this. There was some—there were some statements by the district judge that even if she was wrong on her sentence, she would—on her construction of the guidelines, that she would still give the same sentence. And we have authority that says, in a situation like that, if there were errors in the giving of the sentence or in the computation of guidelines, that that error would be harmless. But you—do you rely on that theory at all? I didn't see that case cited in your brief. No, Your Honor. I don't believe we do. Okay. Thank you. Thank you. That concludes my questions, Judge King. Thank you, Judge Factor. Thank you, Ms. Lyons. Ms. Tarleton, you've saved up three minutes. Thank you, Your Honor. Perhaps I should start where Ms. Wine left off with the sentencing argument. I would point to this court's decision in Mendoza-Mendoza where, in fact, the district court in that case where, again, there was a vacature and remand of the sentence, the district judge there had said, viewing it as objectively as I possibly can, I cannot see a reason for a variance. So it's not as though the court in Mendoza-Mendoza, which was vacated and remanded, did not make a consideration of the 3553A factors. So I don't think that that's a reason for this court not to vacate and remand for resentencing, given the district court's multiple statements and where the district court ultimately ended up at sentencing. Under this court's decision in the United States against Lynn, we believe that we've preserved this argument when Ms. Bennett argued for a sentence below the one that she ultimately received. So we do not believe that this is reviewed for plain error, and we appreciate the government's concession that it did not raise an issue of harmless error. With respect to forfeiture, I wanted to mention where this was raised at the district court. That's at JA-19-3. The government says it's plain error review. You agree that you lose if it's plain error review? Plain error review as to the sentencing? Yeah. We heartily disagree that it's plain error review, but I do think that the error is plain. No, but the government says it's plain error review. If it is plain error review, do you accept the proposition that you lose? No, I don't, Your Honor, because I think under the Supreme Court's case in Rita and Nelson, this court's case in- So you say it's harmless error review? I believe it's reviewed just for reasonableness for abuse of discretion, procedural reasonableness, and then substantive reasonableness. And we believe that we preserved it. Any error has to be prejudicial, and if it's harmless, it doesn't have to. Your Honor, I would point this court to its decision in Venable, where when the district court didn't raise a similar argument, it was not entitled to rely on it. And Ms. Wine did acknowledge that the government never raised the argument that this error was harmless, not to mention the fact I don't think it's harmless in this case. Ms. Bennett received a sentence 17 years longer than the one that she asked for, and the district court three times on the record explained that she believed that the advisory guideline sentence of 27 years was presumptively reasonable. And under that- Counsel, let me- One of the judges has a question. Yeah, I'm sorry. I just want to follow up. I mean, you're right that the issue of harmlessness or plain error wasn't raised by the government. But I mean, the standard of review, I mean, is that something that if they don't raise, can be abandoned in any way or waived? Isn't the standard of review the standard of review? That's a legal principle. I mean, what's the effect of the government not arguing for plain error review in their briefs? I would send this court to its decision inventable, and I think that they have given up the right to argue that. And I also don't think it's harmless in this case. I think that- Okay. Okay, thank you. Thank you, Your Honor. With respect, briefly, if I might, to forfeiture, this is preserved at joint appendix 1937, where Mr. Zaff says, We do believe that under the forfeiture statute, the court's power is limited to the statutory authority for forfeiture, not necessarily for proving the substantive counts. If the amount is not numerated in the indictment, then it should not be forfeited as part of the money judgment. So we believe that our statutory argument was squarely presented to the district court. I see that I'm out of time. So unless there are other questions, we would ask the district court to vacate- either for a new trial or at least for resentencing. Judge Qualam, Judge Strachan, further questions? No questions. No questions for me either. Thank you very much, Ms. Tarleton. Thank you, Your Honor.
judges: Robert B. King, A. Marvin Quattlebaum Jr., William B. Traxler Jr.